# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2024-0346, <u>Appeal of New Hampshire Department of Corrections</u>, the court on April 16, 2025, issued the following order:**

The court has reviewed the record submitted on appeal, has considered the oral and written arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The New Hampshire Department of Corrections (DOC) appeals an order of the Personnel Appeals Board (PAB or Board) granting summary disposition to the employee, overturning the DOC's termination decision, reinstating the employee with back pay and benefits, and imposing alternative discipline. On appeal, the DOC argues that the PAB erred by: (1) applying the superior court summary judgment standard and case law when considering the appropriate standard for summary disposition pursuant to New Hampshire Administrative Rule, Per-A 206.05; (2) concluding that no material facts were in dispute such that it could determine, as a matter of law, that the employee did not violate DOC's use of force policy; (3) not providing the parties with an opportunity to make offers of proof and present oral arguments pursuant to New Hampshire Administrative Rule, Per-A 207.02(e)(2) prior to issuing its order; and (4) concluding that termination of the employee "would be an unjust result" as a matter of law without first hearing testimony from DOC witnesses. We vacate and remand.

The following facts were found by the PAB or are otherwise derived from the administrative record. The DOC hired the employee as a correctional officer in 2016. Thereafter, he received several promotions and met or exceeded expectations in all of his performance evaluations. In 2023, when the events at issue occurred, the employee had been promoted to the rank of lieutenant.

On the morning of April 27, 2023, the employee and three other correctional officers attempted to initiate the transfer of an inmate from the Northern New Hampshire Correctional Facility in Berlin to the Men's Prison in Concord. The transfer of this inmate to Concord had been planned to occur three days earlier, but the inmate claimed that he was suicidal and was able to avoid the transfer based upon DOC's suicide prevention policy. This policy requires the immediate notification of the shift supervisor and behavioral health or nursing staff whenever an inmate claims to have suicidal ideation. After the first attempt to transfer the inmate, DOC medical staff examined the inmate and determined that he was not credibly suicidal. When the officers

attempted to remove the inmate from a cell on April 27, the inmate again claimed that he was suicidal. Believing that the inmate was feigning suicidal impulses to avoid the transfer, the employee told the inmate that he would be evaluated upon reaching Concord and proceeded to load the inmate into a transport van. The inmate passively resisted until the officers began to seatbelt him into the van. At that point, the inmate began slamming his head into the plexiglass divider in front of his seat and started screaming that he was suicidal. In response, the employee restrained the inmate from behind to prevent him from slamming his head.

The sergeant in charge of the transport determined that he could not safely transport the inmate due to his behavior. The employee agreed and began to remove the inmate from the van while maintaining control over him. When the inmate resisted, the employee applied a "mandibular angle pressure point" technique, which is a pain compliance measure approved by the DOC. The employee's other arm was positioned at the inmate's chin to control his head to enable the application of the technique. The inmate began to comply and the employee maintained his position and continued to apply the technique until the inmate was returned to the cell. The inmate was subsequently placed on a fifteen-minute "behavioral watch" rather than a suicide watch, which would have been required had the inmate been determined to be actively suicidal.

Following this incident, all personnel involved filed written reports. All of the reports stated that the employee used the mandibular angle pressure point technique, and no one suggested that the employee used inappropriate or excessive force during the encounter. Nonetheless, the next day the DOC suspended the employee with pay and issued a notice of investigation of the employee's encounter with the inmate. On May 8, the DOC terminated the employee for using an illegal chokehold on the inmate and violating the DOC's suicide prevention policy.

The matter was also referred to the Public Integrity Unit (PIU) of the New Hampshire Department of Justice to determine whether criminal charges against the employee were warranted. The PIU issued a report as part of its investigation and concluded that no evidence of criminal conduct was found and that the employee's use of force to gain compliance from the inmate was reasonable and used in order to accomplish a lawful objective.

On May 22, the employee appealed his termination to the PAB. The PAB initially scheduled a November hearing on the merits, at which the parties would be permitted to make offers of proof, but the employee moved to continue the hearing and the PAB granted his request. Prior to the rescheduled hearing, the employee filed a motion for summary disposition in February 2024.

2

In his motion, the employee argued that the undisputed evidence and facts established that his termination violated the personnel rules and was otherwise unjust. The motion for summary disposition included nearly 500 pages of exhibits. The DOC objected, arguing that it properly exercised its authority to terminate the employee without prior warning or progressive discipline because he violated multiple policies and directives, including the suicide prevention policy. More specifically, the DOC maintained that the employee's failure to follow that policy "was egregious and endangered the safety of everyone present during the attempted transfer," and given that he "was aware of the proper procedure to follow . . . because he had [previously] followed that procedure" his "willful disregard of that [policy] properly resulted in his termination by the [DOC]." The DOC further argued that "the parties disagree on material facts particularly as they pertain to how [DOC policies] should be interpreted and followed, and whether [the employee's] actions demonstrate a willful disregard of these [DOC] policies that placed the safety of multiple people at risk." The objection included approximately 57 pages of exhibits.

The PAB issued an order granting the motion for summary disposition on March 27. In its order, the PAB noted that the DOC terminated the employee without speaking to any of the other correctional officers present during the incident and that none of the officers' reports suggested that the employee used inappropriate or excessive force during the encounter. It further noted that the PIU investigation concluded that the video evidence relied upon by the DOC to justify the employee's termination was not sufficiently detailed to support the allegations claimed by the DOC.

The PAB reasoned that all of the witnesses who would testify at a hearing on the merits would testify consistently with the statements they provided to the PIU. Based upon the consistency of these statements, provided by a "broad selection of first-person observers and the opinion of the DOC's own use-of-force expert, the Board determined that no reasonable factfinder could determine that [the employee] had used inappropriate or excessive force on the inmate."

With respect to the claim that the employee failed to comply with the DOC's suicide prevention policy, the Board found that there was sufficient evidence to conclude that the employee had violated the policy. Nevertheless, the Board also found that terminating the employee based upon this violation would be unjust. In light of the employee's "exemplary" employment record prior to the incident, and after considering all of the factual evidence, the PAB concluded that the incident "should have been viewed as a 'teachable moment,' rather than a basis for immediate termination." Consequently, the PAB reinstated the employee with full rank, back pay and benefits, less a twenty-day workday suspension.

3

The DOC moved for a rehearing arguing, in part, that material facts remained in dispute and, as a result, summary disposition was inappropriate. The DOC also argued that the Board denied "the [DOC] any opportunity to present testimony and evidence to refute the facts as presented by the [employee] and relied on by the Board" and, therefore, the PAB decision was erroneous as a matter of law. The PAB denied the motion, finding that, although the motion for rehearing alleged that factual disputes would be presented if a hearing were granted, the DOC "provides no specific detail of what those factual disputes would be" and "[s]uch vague and conclusory statements do not provide a basis to reverse the Board's decision." This appeal followed.

Our review of PAB decisions is governed by statute. Pursuant to RSA 541:13 (2021), the party seeking to set aside any decision of the PAB bears the burden of proving that the decision is clearly unreasonable or unlawful. The PAB's factual findings are deemed prima facie lawful and reasonable. RSA 541:13. A decision by the PAB shall not be set aside "except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." Id. However, we review the PAB's interpretations of statutes and administrative rules de novo. See Appeal of N.H. Div. of State Police, 171 N.H. 262, 266 (2018).

We first address the DOC's argument that the PAB applied the wrong standard by referencing the superior court's summary judgment standard when considering the motion for summary disposition. More specifically, the DOC maintains that the summary judgment standard is inappropriate given the "substantially different purpose and procedural nature of the two proceedings," and that, with respect to PAB proceedings, "public hearings are strongly favored and are conducted . . . with limited pretrial discovery authorized." The DOC further argues that "[t]aking the extensive pre-trial discovery obligations out of the civil litigation context and overlaying them onto an administrative hearing is unreasonable and counterproductive to the goals advanced by the administrative procedures acts and the statutes creating the personnel system." We disagree.

Pursuant to PAB rules, "[i]f at any time, with or without a motion by a party, the board determines that there are no material facts in dispute, the board shall decide the appeal on the undisputed facts as presented by the parties." N.H. Admin. R., Per-A 206.05(f). Contrary to the DOC's argument, PAB regulations favor deciding cases on summary disposition whenever possible, and it is within the PAB's discretion to determine whether material factual disputes exist "at any time with or without a motion by a party." Id.

The PAB did not exceed its authority by referencing superior court review standards in granting the employee's motion for summary disposition. The PAB is empowered "to fill in the details to effectuate the purpose of the statute"

so long as its exercise of discretion does not "add to, detract from, or modify the statute" that the PAB intends to implement. N.H. Div. of State Police, 171 N.H. at 267. Nothing in the PAB's statutory or regulatory restrictions prohibits the PAB from referencing sources of authority to reach its conclusions. See RSA 21-I:58 (Supp. 2023); see N.H. Admin. R., Per-A 206.05(f). Rather, the PAB considered the "well-developed body of decisional law arising from Superior Court summary judgment decisions" when deciding whether the employee satisfied the summary disposition standard. Doing so enabled the PAB to effectuate the purpose of its enabling statute and its regulations that provide for summary disposition. Accordingly, in deciding the employee's motion for summary disposition, the PAB was permitted to consider the superior court standards for summary judgment motions as set forth in RSA 491:8-a (Supp. 2010), as well as applicable case law regarding summary judgment.

We next consider the DOC's argument that the PAB erred by not providing the DOC with the opportunity to make offers of proof and oral arguments prior to issuing its decision. The DOC maintains that New Hampshire Administrative Rule, Per-A 207.02(e) mandates that the PAB convene a hearing at which the parties make oral arguments and offers of proof unless the parties otherwise stipulate to a set of undisputed facts. The employee argues that the DOC's interpretation of this rule is in tension with the plain language of Per-A 206.05(f). He posits that, if the PAB is authorized, "at any time, with or without a motion," to decide an appeal based upon "the facts as presented by the parties," N.H. Admin. R., Per-A 206.05(f), then the PAB has the discretion to determine whether a hearing is necessary.

Resolution of this dispute requires us to interpret the applicable administrative rules. We use the same principles of construction when interpreting both statutes and regulations. See Appeal of Silva, 172 N.H. 183, 187 (2019). When interpreting administrative rules, we ascribe the plain and ordinary meanings to the words used, looking at the regulatory scheme as a whole, and not piecemeal. See N.H. Div. of State Police, 171 N.H. at 266-67. Consistent with our rules of statutory interpretation, we interpret the rules as written and will not consider what the administrative agency might have said or add language that the agency did not see fit to include. See Doe v. Attorney General, 175 N.H. 349, 352 (2022). Nor do we presume that the agency wastes words or promulgates redundant provisions. See id. We construe all parts of a rule together to effectuate its overall purpose and avoid an absurd or unjust result. See id.

New Hampshire Administrative Rule, Per-A 207.02 pertains to the "Types of Hearings" before the PAB and provides, in relevant part:

> (a) Except as allowed by (f) below, the board shall limit any hearings on motions to oral argument.
> . . . .

5

(d) Except as provided in (e) below, the board shall convene full evidentiary hearings, permitting live witness testimony, in the following appeals:

> (1) Termination; . . .

(e) In cases under (d) above, the board shall hear the case on the basis of oral argument and offers of proof if:

> (1) The parties agree to do so and the board determines that the testimony of witnesses is not necessary to address a relevant matter involving the credibility of witnesses or to understand or fairly assess the arguments at issue; or

> (2) The case does not involve disputed issues of material fact.

(f) In all cases, parties may offer documentary evidence and memoranda of law.

The employee argues that Per-A 207.02(a) is the controlling provision and plainly limits any hearing regarding motions, like a motion for summary disposition, to oral argument. According to the employee, this rule "is the only provision in this section of the rules that specifically speaks to the hearings process for motions and clearly does not require any hearing [to] occur when a motion has been filed, but limits any such hearing to oral arguments." We agree that Per-A 207.02(a) does not require a hearing prior to the PAB ruling on a motion, but we disagree with the employee's assertion that it is the controlling provision in this case.

New Hampshire Administrative Rule, Per-A 207.02(a) sets forth a general rule that applies to all motions, including motions for summary disposition, limiting hearings to oral arguments. But Per-A 207.02(d) and (e) establish rules that specifically apply to appeals involving termination, demotion, suspension without pay, and certain other appeals that do not involve disputed material facts. In those cases, the Board hears the matter on the basis of oral arguments and offers of proof. N.H. Admin. R., Per-A 207.02(d)-(e).

This apparent contradiction leaves open the question of whether a hearing on a motion for summary disposition in a termination case is limited to oral arguments, pursuant to Per-A 207.02(a), or is required to include oral arguments and offers of proof, pursuant to Per-A 207.02(d) and (e). To the extent that these rules are in conflict, the specific rule controls. See State v. Rix, 150 N.H. 131, 133 (2003) (a specific law is deemed to control a specific case over a general law). Therefore, the question as to whether a hearing must be held turns not on Per-A 207.02(a), but rather on Per-A 207.02(d) and (e)

6

because this case pertains to a motion for summary disposition in an appeal of a termination. In other words, the subject of the appeal, and not the nature of the motion before the Board, dictates the procedural processes available to the parties. This conclusion is consistent with the underlying principles supporting due process protections, which determine the process owed in terms of the interests at stake. See Appeal of Mullen, 169 N.H. 392, 397 (2016).

Under New Hampshire Administrative Rule, Per-A 207.02(d), a full evidentiary hearing is required in all termination cases unless Per-A 207.02(e) applies. Pursuant to that rule, "the board shall hear the case on the basis of oral argument and offers of proof if . . . [t]he case does not involve disputed issues of material fact." N.H. Admin. R., Per-A 207.02(e)(2) (emphasis added). When a statute or a rule employs the term "shall," our rules of statutory construction make enforcement of any such provision mandatory. See Appeal of State of N.H., 175 N.H. 327, 340 (2022). Accordingly, in an appeal of a termination that does not involve disputed material facts, the PAB must hear the case on the basis of oral arguments and offers of proof.

Nonetheless, the employee contends that this interpretation creates a conflict with New Hampshire Administrative Rule, Per-A 206.05(f). We disagree.

We construe rules, as we construe statutes, so that they do not contradict each other and so that they lead to reasonable results which effectuate the regulatory scheme. See Rix, 150 N.H. at 132-33; see also Appeal of Silva, 172 N.H. at 187. Therefore, New Hampshire Administrative Rule, Per-A 206.05(f) must be read in harmony with Per-A 207.02(e)(2). As we have previously concluded, Per-A 207.02(e)(2) requires the Board to provide the parties with the opportunity to present oral arguments and make offers of proof when an appeal of a termination does not involve disputed material facts. Per-A 206.05(f) provides that the Board can determine at any time and on its own initiative that a case does not involve material factual disputes. N.H. Admin. R., Per-A 206.05(f). Upon making that determination, the rule requires the Board to decide the appeal on the basis of the undisputed facts. Id.

Nothing in the plain language of this rule addresses whether a hearing must be held prior to the Board deciding the appeal. Nor does the language of New Hampshire Administrative Rule Per-A 206.05(f) indicate whether the parties are entitled to notice and an opportunity to be heard before the Board decides the appeal. To adopt an interpretation of the language "at any time, with or without a motion by a party" that grants the Board the discretion to decide an appeal without a hearing conflicts with the plain language of Per-A 207.02(e)'s hearing mandate. Conversely, requiring a hearing at which the Board hears an appeal on the basis of oral arguments and offers of proof before it decides a motion for summary disposition is consistent with both Per-A

7

206.05(f) and 207.02(e)(2). Accordingly, we conclude that the PAB erred by reaching its decision on the motion for summary disposition without a hearing.

Finally, we address the DOC's argument that the PAB erred in finding that the DOC's termination decision was unjust as a matter of law. The DOC argues the PAB "cannot appropriately reach this conclusion without giving [it] the opportunity to present witnesses and assessing the credibility of those witnesses." Given our conclusion that the PAB erred in deciding the motion for summary disposition without providing the parties with an opportunity to make oral arguments and offers of proof, we further conclude that the PAB should address whether the termination of the employee was just or unjust at the future proceeding.

Accordingly, we conclude that the DOC has not met its burden of demonstrating that the PAB's reference to the superior court summary judgment standards was clearly unreasonable or unlawful. However, we also conclude that the PAB violated its own rules by not providing the parties with an opportunity to make oral arguments and offers of proof before the PAB decided the employee's motion for summary disposition. See N.H. Admin. R., Per-A 207.02(e)(2). In light of this error, we vacate the PAB's order and remand this appeal for a hearing in which the PAB can hear the case on the basis of oral arguments and offers of proof.

Vacated and remanded.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**

8